## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WILLIAM BRIAN MULDER,

      Defendant.

Case No. 19-CR-0157-001-JFH

USM No.: 16002-062

## OPINION AND ORDER

Before the Court is Defendant William Brian Mulder's ("Defendant") Motion for Reduction of Sentence ("Motion") filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. No. 138] and Supplements. Dkt. Nos. 141 and 142 -- SEALED. In his Motion, Defendant argues that a serious injury while imprisoned and multimorbidity health conditions constitute extraordinary and compelling factors that warrant either a reduction of his sentence to credit for time served, or to have the remainder of his sentence converted to a requirement that he be monitored on home confinement as an additional condition of supervised release. *Id*. The Court has previously found that Defendant has exhausted his administrative remedies, giving this Court jurisdiction to consider his Motion. *See* Dkt. No. 139 at 1. The United States of America (the "Government") has filed a Response in Opposition to Defendant's Motion. Dkt. No. 143. The Government argues the Court should deny Defendant's motion for relief because his overall medical condition and treatment protocol do not constitute extraordinary and compelling reasons warranting release. The Government further argues that § 3553(a) factors weigh against release. For the reasons set forth below, Defendant's Motion [Dkt. No. 138] is DENIED.

## BACKGROUND

On October 19, 2021, Defendant plead guilty to Counts 44 and 71 of the Second Superseding Indictment, charging him with Causing Interstate Transmission of Moneys Taken by Fraud, in violation of 18 U.S.C. §§ 2314 and 2(b) (Count 44), and Engaging in Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957(a) (Count 71). Dkt. No. 122. On June 1, 2022, this Court sentenced Defendant to a term of imprisonment of 84 months as to each of Counts 44 and 71, to run concurrently, each with the other. Dkt. No. 134 at 2. The Court further imposed a three-year term of supervised release as to each of Counts 44 and 71, to run concurrently, each with the other. *Id*. at 3. Defendant was also ordered to pay a $200 assessment and restitution to three payees totaling $8,447,080.75. *Id*. at 6. Defendant is currently imprisoned at FCI Butner-Low, part of the Butner Correctional Complex that includes FMC Butner. His presumptive release date is April 27, 2028.

## STANDARD OF LAW

The Tenth Circuit has adopted a three-step test for considering motions for compassionate release. *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). The first step requires the Court to determine, at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *Id*. The second step requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. *Id*. The third step requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of the case. *Id*. The Court must address all three steps when granting such motion. *Maumau*, 993 F.3d at 831, n.4 (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

However, at step two, "the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants." *Maumau*, 993 F.3d at 834. Thus, "USSG § 1B1.13 is not presently an 'applicable' policy statement that controls the definition of 'extraordinary and compelling reasons' when a prisoner initiates a § 3582(c)(1)(A) proceeding." *United States v. Carr*, 2012 WL 1400705, at *1 (10th Cir. Apr. 14, 2021). Finally, if the Court finds that any of the three prerequisite steps are lacking, the Court may deny the compassionate release motion without addressing the additional steps. *Maumau*, 993 F.3d at 838 n.4. (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

## ANALYSIS

As to step one, the Court must determine, in its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *Maumau*, 993 F.3d at 831. Defendant argues that his sentence should be reduced or otherwise altered for the following "extraordinary and compelling reasons": (1) that he suffers from multiple serious physical or medical conditions; (2) that a fall in August 2022 resulted in serious injury that exacerbates his ongoing multiple chronic medical conditions; (3) that the BOP has failed to provide competent medical care and his deteriorating physical conditions cannot be properly addressed within the environment of a correctional facility; and (4) that he must be released from imprisonment so he can resume a proper medical care regimen. Dkt. No. 138 at 16-19; *see also* PSR, ¶¶ 46-50. In summary, Defendant argues that his serious underlying medical conditions, coupled with the lack of proper institutional medical care, justify the relief sought in his Motion. *Id.*; Dkt. Nos. 141 and 142 – SEALED.

Defendant's medical records indicate that he is 64 years old and suffers from obesity, sleep apnea, asthma, hypertension, heart failure, frontotemporal dementia, myelodysplastic syndrome, low back pain, depressive disorder, enlarged prostate, and allergic rhinitis. Dkt. No. 143 at 6, 97

– 100, 164.  His records reflect that he has a monitored pacemaker [*Id*. at 9, 11], and is prescribed numerous medications for his conditions, including two medications for heart failure: Eplerenone and Empagliflozin; over-the-counter medications and Lidocaine HCl Ointment 5% as needed for pain; Escitalopram Oxalate 20 mg for major depressive disorder; Fluticasone Prop 50 mcg, 16 ml Nasal spray for allergic rhinitis; Rosuvastatin Calcium 20 mg for Hyperlipidemia, unspecified; Sacubitril-Valsartan 24-26 mg for hypertension; Terazosin HCl 2 mg for enlarged prostate with lower urinary tract symptoms; trazodone HCl 50 mg and Escitalopram Oxalate 20 mg for major depressive disorder, recurrent; and Folic Acid 1 mg.  *Id.* at 38, 97 – 100.  The BOP lists Defendant's current healthcare at Level 3 -- Unstable, Complex Chronic Care. Dkt. No 143 at 1.  Defendant is seen regularly, with records confirming six visits with medical personnel between November 1 and December 8, 2022. *Id*. at 2, 6, 17, 27, 36, 39.  He has also been seen by specialists at the Duke Regional Hospital.  *Id.* at 47, 92; Dkt. No. 138 at 16.  Medical providers are aware of Defendant's health history and are in possession of his records from the Mayo Clinic. Dkt. No. 143 at 39. Defendant's hypertension has improved during his time in BOP.  In contrast to his self-reported readings from 2021 and early 2022, Defendant's five most recent blood pressure readings at BOP have been 122/74, 136/84, 143/82, 143/78, and 129/82. *Id*. at 233-34.  Medical records confirm that he suffered a fall resulting in injuries, after which he was immediately taken to the urgent care room at the facility for evaluation. He was then sent to Granville Hospital for observation and a CT scan, which found no intracranial bleed, and Defendant was noted to be fully alert and oriented after initial mild confusion.  *Id.* at 9, 140, 154.  He did not lose consciousness, and suffered a bruise to his face, a cut that was sealed with adhesive, and a relative afferent pupillary defect to his right eye, for which no treatment was recommended, as his vision may gradually improve with time,

4

and would be monitored by his healthcare providers. *Id.* at 58, 140, 142, 224.  He was discharged from the hospital the day after the fall.  *Id.* at 140.

Next, Defendant argues that his medical conditions and complications of his fall combine to impair his ability to perform activities of daily living (ADLs).  Dkt. No. 138 at 9, 18, 19, 20, 21. Defendant cites BOP Program Statement 5050.50, arguing that an inmate's ability to perform ADLs is "a major consideration in a compassionate release."  *Id.* at 21.  First, BOP guidance is inapplicable to motions for compassionate release filed by defendants.  *See United States v. Brooker*, 976 F.3d 228, 238 n.5 (2d Cir. 2020) ("Because Application Note 1(D) [to § 1B1.13] does not bind district courts, they are similarly not bound by BOP's updated guidance on what counts as an extraordinary and compelling reason.").  Second, Defendant's medical records do not support his assertion that he has diminished capacity to perform ADLs.  Although he suffered leg injuries from the fall, medical records note that he was walking independently with a walker, was alert and oriented, and was "in no acute distress."  Dkt. No. 138 at 3.  As for eating, bathing, and toileting, the only evidence in the medical records showing difficulty with these activities is Defendant's complaint that he is "easily gagged" when attempting to eat solid foods.  *Id.* at 29. Many of Defendant's reasons for release are based on subjective beliefs or claims that are not supported by his medical record.  Medical providers have noted inconsistencies between his reports and his objective condition.  His treating physician noted in November that Defendant "proceeded to state that he has difficulty swallowing . . . [h]owever, his commissary list shows he has been consuming a lot of items."  *Id.* at 39.  At one visit, a provider "reviewed inmate MULDER's statement with him," where "inconsistencies were noted."  *Id.* at 15.  These inconsistencies included telling the provider that he had reported his various medications to "sick

call" shortly after he arrived at his facility and then later claiming that he didn't know what "sick call" was. *Id.*

The record here clearly reflects that Defendant is not at undue risk. This finding is based upon: Defendant's imprisonment at a facility capable of providing immediate diagnosis and specialized treatment for a wide range of health concerns; his current high-level medical care classification; and Defendant's medical records depicting comprehensive medical care, which includes prescribed medication to minimize risk and ongoing monitoring of his health concerns. Defendant clearly suffers from chronic health comorbidities. However, when evaluating a defendant's § 3582 motion alleging health risks while imprisoned, a district court must balance this risk against its responsibility to uphold the reasons for imposition of an imprisonment sentence. At issue is not that a defendant is unhealthy, but that continued imprisonment substantially contributes to the likelihood of life-threatening complications or death. Defendant has not demonstrated that his imprisonment places him in jeopardy of life-threatening complications based on this Court's examination of his various medical conditions, classification status, and treatment history. Further, as set out in the dissent in *Maumau,* 993 F.3d at 838 (Tymkovich, J. concurring), cases rising to the level of extraordinary and compelling "should be relatively rare;" that a combination of factors, to include a defendant's unique circumstances is necessary to reach "extraordinary and compelling" circumstances justifying a sentence reduction. The Court finds that Defendant's medical conditions and imprisonment do not rise to the level of extraordinary and compelling reasons to warrant a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Because the Court finds that Defendant's Motion fails at step one of its analysis, it will not consider the remaining steps. *See Maumau*, 993 F.3d at 838 n.4. (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. No. 138] is DENIED.

IT IS SO ORDERED this 19th day of January 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE