IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      **Plaintiff,**<br><br>v.<br><br>**WILLIAM BRIAN MULDER,**<br><br>      **Defendant.** | Case No. 19-CR-0157-001-JFH<br><br>USM No.: 16002-062 |

## OPINION AND ORDER

Before the Court is Defendant William Brian Mulder's ("Defendant") second Emergency Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. No. 166], filed on September 28, 2023, and Documents, Supplements, and Motions to Take Judicial Notice, filed between October 2 and November 6, 2023. Dkt. Nos. 168, 169, 170, 171, 172, 173, 174, 175, and 177. These filings are collectively referred to as the "Motion."

In his Motion, Defendant restates his multimorbidity health concerns and argues that the severity and likely lethality of his medical problems constitute extraordinary and compelling factors that warrant a reduction of sentence. Defendant further requests that the Court take into consideration USSG §1B1.13 in its findings and moves for a reduction in sentence pursuant to retroactive Amendment 821, Part B – amending Ch. 4 for certain zero-point offenders. Finally, Defendant maintains that a good conduct record while confined and a low risk of reoffending justify his early release. Defendant requests that the Court reconsider its previous denials and reduce his sentence to time served. For the reasons set forth below, Defendant's second Emergency Motion for Reduction of Sentence [Dkt. No. 166] is DENIED.

## BACKGROUND

On October 19, 2021, Defendant pled guilty to Counts 44 and 71 of the Second Superseding Indictment, charging him with Causing Interstate Transmission of Moneys Taken by Fraud, in violation of 18 U.S.C. §§ 2314 and 2(b) (Count 44), and Engaging in Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957(a) (Count 71). Dkt. No. 122. On June 1, 2022, this Court sentenced Defendant to a term of imprisonment of 84 months as to each of Counts 44 and 71, to run concurrently, each with the other. Dkt. No. 134 at 2. The Court further imposed a three-year term of supervised release as to each of Counts 44 and 71, to run concurrently, each with the other. *Id*. at 3. Defendant was also ordered to pay a $200 assessment and restitution to three payees totaling $8,447,080.75. *Id*. at 6.

In November 2022, Defendant filed a § 3582(c) Motion and two Supplements requesting a reduction of sentence due to serious injuries sustained in a fall while confined and worsening multimorbidity health conditions constituting factors supporting his release [Dkt. No. 138]. This Court denied Defendant's Motion. Dkt. No. 144, at 3-7. In June 2023, Defendant filed a Sealed Emergency Motion to Reconsider, accompanied by nine Supplements, asking this Court to reconsider its denial of his motion for relief. Dkt. No. 148. On July 31, 2023, this Court dismissed Defendant's motion as untimely, but noted that, if permitted to review the merits of Defendant's arguments, it would, once again, deny Defendant's request. Dkt. No. 158, at 4 - 6. The Defendant is currently imprisoned at FCI Butner, Medium I. His presumptive release date is February 17, 2028.

## STANDARD OF LAW

The Tenth Circuit has adopted a three-step test for considering motions for compassionate release. *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) (citing *United States v.*

*Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)).  The first step requires the Court to determine, at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *Id*.  The second step requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.  *Id*.  The third step requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of the case.  *Id*.  The Court must address all three steps when granting such motion. *Maumau*, 993 F.3d at 831, n.4 (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)). Although the Circuit Court found that at step two, USSG § 1B1.13 was not applicable because the existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants (*Maumau*, 993 F.3d at 834), the Sentencing Commission revised § 1B1.13 effective November 1, 2023, thereby rendering the policy statement applicable and controlling the definition of "extraordinary and compelling reasons" when a prisoner initiates a § 3582(c)(1)(A) proceeding.  Finally, if the Court finds that any of the three prerequisite steps are lacking, the Court may deny the compassionate release motion without addressing the additional steps. *Maumau*, 993 F.3d at 838 n.4 (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

## ANALYSIS

The provisions of Fed. R. Crim. P. 11(e), together with the requirements of Rule 35, implement and complement the longstanding precedent on the overarching importance and finality of the statutory directive contained in 18 U.S.C. § 3582(b), that a judgment of conviction that contains a sentence of imprisonment is final, notwithstanding the fact that a sentence to imprisonment can subsequently be modified in certain limited circumstances.  "Federal courts are

3

forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685 (2011). One such exception is contained in 18 U.S.C. § 3582(c)(1). The purpose of the "compassionate release" provision of § 3582(c)(1)(A) is to allow district courts to reduce the sentences of incarcerated persons under "extraordinary and compelling" circumstances, when no other statute provides an avenue for relief. *See United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997); *citing United States v. Blackwell*, 81 F.3d 945, 947-48, 949 (10th Cir. 1996). Further, as set out in *Maumau,* 993 F.3d at 838 (Tymkovich, J. concurring), cases rising to the level of extraordinary and compelling "should be relatively rare;" and the length of sentence alone is likewise insufficient to elicit a reduction, that a combination of factors, to include a defendant's unique circumstances is necessary to reach "extraordinary and compelling" circumstances justifying a sentence reduction. A district court retains discretion as to what constitutes extraordinary and compelling circumstances, but that discretion is not unfettered. When evaluating a motion for reduction, the court is restrained by applicable law, newly revised §1B1.13, and a determination of whether a defendant's reasons are "extraordinary" and "compelling" as that language is commonly understood.

The Court engaged in a comprehensive *de novo* analysis of this matter, to include but not limited to a review of the instant Motion, Defendant's original Motion for Reduction of Sentence [Dkt. No. 138], his Motion to Reconsider [Dkt. No. 138], and the BOP's most recent medical records from July to October 19, 2023. Further, Defendant's arguments must now be reviewed in light of the Sentencing Commission's revision of USSG §1B1.13, which established policy statements applicable when a prisoner initiates a § 3582(c)(1)(A) proceeding.

Defendant reaffirms his multimorbidity health concerns, listing new medical diagnoses and providing additional detail on the severity, consequences, and likely lethality of his medical problems if he remains in an institutional setting.  He argues that:  his health has worsened; that errors in BOP medical records understate the gravity of his many health concerns, in particular complications resulting from his fall in 2022; that he contracted COVID-19 in April 2023, from which he has lingering effects and risk of an adverse reaction should he again succumb to the disease; he reasserts ongoing delays and neglect in his testing, care, and treatment; and that the Bureau of Prisons (BOP) is incapable of addressing his medical needs and is not following up with specialist recommendations for testing and care.  Dkt. No. 166 at 12-16; Dkt. Nos. 168 – 174 generally.  Defendant presents examples that FMC Butner has failed to provide timely testing and care [Dkt. Nos. 168, 169]; and an NPR article describing the death of five FMC Butner inmates due to delays in testing and treatment.  Dkt. No. 175 at 2-13.  Defendant argues that only the Mayo Clinic and competent community-based physicians can effectively treat his varied health conditions.  Finally, Defendant has objected to a recent transfer from FMC Butner to FCI Butner, has asked that the Court take judicial notice of this event, and requests any possible assistance in effecting a transfer back to FMC Butner. [Dkt. Nos. 170 and 171].

Defendant reports that he suffers from Behavioral Variant Frontotemporal Dementia (BVFD) and may exhibit beginning stages of Parkinson's Disease, Restrictive Lung Disease, Stage 2 Chronic Lung Disease, Obstructive Sleep Apnea, Positive Antinuclear Antibody Abnormal Elevated (ANA), indicating the presence of connective tissue disorder, Myelodysplastic Syndrome (MDS), Stage 3 Diastolic Heart Failure, Prostate Hyperplasia, Anemia, Hyperlipidemia, Essential Resistant Hyperension/Hypotension, Hyperaldosteronism, Complete Hear Block (electrical), use of a pacemaker, Severe Concussion, Post Concussion Syndrome with Positional Headaches, loss

of eyesight in right eye and hearing loss related to a concussion, an April 2023 COVID-19 infection and ongoing symptoms of Long COVID, and Asthma. *Id*. at 12-16.  Defendant argues that failure by the BOP to provide critical medication caused a fall in August 2022, resulting in a concussion and related injuries.  He reports that a second fall in 2023, together with his ongoing health problems and the BOP's negligence and failure to provide proper care have caused his overall physical and mental condition to decline.  *Id.*, at 16-23.

Review of BOP medical records reveals that, as of October 17, 2023, Defendant's <u>active diagnoses</u> <u>include</u>: MDS, Anemia, unspecified, Hyperaldosteronism, unspecified, Testicular Dysfunction, Obesity, Hyperlipidemia, unspecified, Major Depressive Disorder, recurrent, Atherosclerosis, Allergic Rhinitis, Unspecified Disorder of nose and nasal sinuses, Asthma, Gastroesophageal Reflux Disease without Esophagitis, Disease of Esophagus, unspecified, Disease of Digestive System, unspecified, Osteoarthritis of knee, unspecified, Unspecified Kyphosis, Cervical Disc Disorder, unspecified, Anxiety Disorder, Degenerative Disease of Nervous System, unspecified, Sleep Apnea, Disorder of Lacrimal System, Diplopia, low vision in one eye but normal vision in other eye, other Peripheral Vertigo, Unspecified hearing loss, Essential (primary) Hypertension, and Heart Failure.  The following conditions are <u>in</u> <u>remission</u>: Dizziness and Giddiness, and Injury to Head, unspecified.  The following conditions <u>are</u> <u>resolved</u>: Calculus of Kidney, shortness of breath, low back pain, Enlarged Prostate with lower urinary tract symptoms, Dysphagia, unspecified, Headache, unspecified, Fracture of facial bones, crushing injury of shoulder and upper arm, COVID-19, presence of cardiac pacemaker.  <u>Active</u> <u>prescription</u> <u>medications</u> include: Cyanocobalamin (Vit B-12), Testosterone Cypionate 200 MG/ML for Testicular Dysfunction, Acetaminophen 325 MG, Ibuprofen 800 MG, and Lidocaine HCI 5% ointment and patch for pain, Albuterol Inhaler HFA for Asthma, Amitriptyline 10 MG for

headache pain, Aspirin 81 MG and Empagliflozin 10 MG for heart condition, Desipramine 25 MG for pain, Eplerenone Oral Tablet 25 MG for Hypertension, Escitalopram Oxalate 20 MG for Depression, Ezetimibe 10 MG for Hyperlipidemia and Atherosclerosis, Fluticasone Prop Nasal Spray 50 MG for allergies, Folic Acid (Vit B-9), Meclizine HCI 25 MG for Peripheral Vertigo, Omeprazole 20 MG for Gastroesophageal Reflux Disease, Sacubitril-Valsartan 24-26 MG for Heart Failure, and Terazosin HCI 2 MG for Prostate Hyperplasia.  Defendant possesses or has been issued the following medical devices: wheelchair, magnifier, bed wedge, a reacher, CPAP machine, shower chair/bench, walker, alternate institutional shoes, pacemaker, and eyeglasses.

Medical records further reveal that on or about July 28, 2023, Defendant participated in a neurology and ophthalmology appointment and MRI at Duke Medical Center.  The test revealed no intracranial abnormalities and an unlikely risk of a cerebrospinal (CSF) fluid leak. Findings determined that globes, nerves, intraconal fat, extraocular muscles, intraorbital vasculature, and lacrimal glands were all normal.  During the evaluation, Defendant's vital signs were normal, he was not in acute distress, was alert with good attention and concentration, and speech was clear and oriented to person, place, and time.  Neurology advised that Defendant does not require further emergent intervention and recommended primary care physician follow up.  An encounter performed at the Oncology Unit on September 14, 2023, determined that Defendant is a very low risk of Myelodysplastic Syndrome (MDS), with a plan to continue observation as Defendant's peripheral blood counts remain stable, and may consider growth factor support in the future if patient were to become transfusion dependent or develop infections due to neutropenia.

Based on MRI results that found no intracranial abnormalities, and the determination that Defendant is a low risk of MDS and for CSF fluid leak and does not currently require oncology related services, BOP medical personnel determined that Defendant does not need hospital care

and requested his transfer from the medical center to another facility at the Butner Complex. According to BOP, Defendant does not need a hospital bed, will receive all medications onsite from the pill line, and will be able to continue with consults that medical staff deem necessary. On October 19, 2023, Defendant was transferred from FMC Butner to FCI Butner, Medium I, which is located within the Butner Complex. Defendant has formally objected to this transfer, has asked that the Court take judicial notice, and requests any possible assistance in effecting a transfer back to FMC Butner [Dkt. Nos. 170, 173, 177].[1]

**Application of USSG §1B1.13**

Defendant cites two factors set out in revised §1B1.13 as amended effective November 1, 2023: §1B1.13(b)(1)(C) – the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death; and §1B1.13(b)(1)(D)(i) – defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease, and (ii) – due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease … as described in clause (i). Dkt. No. 169, at 2.

Section 1B1.13, effective November 1, 2023, is applicable. As to §1B1.13(b)(1)(C), the Court finds that although Defendant argues that his medical conditions are deteriorating, that the BOP is negligent in his care and incapable of properly treating his many physical disorders, and that he faces imminent death if he remains confined, BOP medical records paint a different picture.

---

[1] The authority to designate the place of a prisoner's imprisonment has been bestowed by Congress exclusively on the Director of the Bureau of Prisons, not the courts. *See* 18 U.S.C. § 3621(b). Further, the last sentence of § 3621(b) expressly states that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."

Records reflect that Defendant's BOP-diagnosed medical complaints (not included are Defendant's complaints of BVFD, ANA, and Long COVID) are being treated with prescription medication, alleviated with medical devices, are in remission or have been resolved. Medical testing has ruled out intracranial abnormalities and MDS cancer risk. Based on Defendant's overall health status, he was transferred from Butner's hospital facility to general population at FCI Butner. Currently, Defendant's healthcare level remains at Level 3 – Unstable, Complex Chronic Care, which is defined as outpatient care for inmates that have complex, and usually chronic health conditions that require frequent clinical contacts to maintain control and stability of their condition(s), may require assistance with some activities of daily living, and may require periodic hospitalization. Should Defendant's health deteriorate, he could be returned to Butner's hospital facility or his care level upgraded. As to §1B1.13(b)(1)(D)(i), Defendant is currently housed at a facility suffering from a high rate of COVID-19 exposure. Of the 874 inmates at FCI Butner, Medium I, 401 inmates and zero staff have tested positive for COVID-19 (at FMC Butner, where Defendant was formerly imprisoned, of 850 inmates, 262 inmates and zero staff have tested positive for the disease). The Court finds that Defendant is at risk of being affected by an ongoing outbreak of COVID-19 and, due to his advanced age and many personal health risk factors, Defendant is at increased risk of suffering severe medical complications or death should he again contract COVID-19. Based on these facts, the Court finds that Defendant has met his burden of establishing that extraordinary and compelling circumstances exist that may warrant a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and USSG §1B1.13(b)(1)(D)(i).

Having found that extraordinary and compelling circumstances exist that may warrant a reduction of sentence, the Court must next consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether a reduction is warranted and, if so, to arrive at an appropriate sentence.

Defendant, an employee and licensed representative of a national wealth management firm, engaged in sophisticated and multifaceted fraud schemes from 2004 until August 2020. Defendant defrauded several financial institutions by obtaining loans and lines of credit by pledging fraudulent collateral, resulting in a net loss to two financial institutions of more than $3,947,000. Beginning in the mid-1990s, Defendant engaged in separate parallel schemes to defraud two individuals with whom he had a fiduciary investment relationship. Defendant misrepresented to these individuals that he controlled a multimillion-dollar family trust and convinced them to invest moneys that he used for his personal expenses. Defendant also convinced one of the individuals to create and fund a trust to provide long-term care for his special needs son, from which Defendant fraudulently transferred moneys for his personal use. In 2005, Defendant presented this same individual with another investment opportunity offering a favorable return on a real estate project. The project was bogus, and Defendant converted invested funds to his personal use. All told, Defendant obtained more than $8,447,000 from three victims by false and fraudulent representations and engaged in monetary transactions from criminally derived moneys. The breadth, extent, large monetary loss, and serious nature of the instant conduct constitutes aggravating factors that heavily weigh against any modification of sentence. If a proposed modified sentence strays too far from the original sentence, § 3553(a) factors cannot support the sentence reduction, even where a defendant presents an extraordinary and compelling circumstance. Further, Defendant has served just 18 months of his net 71-month sentence. Reducing Defendant's sentence by a significant amount would produce a sentence that no longer reflects the seriousness of the offenses, promotes respect for the law, and affords adequate deterrence to criminal conduct. Further, as set out in the *Maumau*, sentence reductions should be

relatively rare.  Consequently, based on the Court's analysis and balancing of the bases for reduction of sentence against § 3553(a) factors, a reduction in sentence is not warranted.

The Court finds that the original sentence is sufficient, but not greater than necessary, to comply with the purposes of imposing a sentence.  Consideration of § 3553(a) factors justify the sentence imposed after consideration of the nature and characteristics of the Defendant, the seriousness of the offense, the need to promote respect for the law, the necessity to protect the community from further crimes, and the need to provide for adequate deterrence.  18 U.S.C. §§ 3553(a)(1) and (2)(A)-(C).

**Amendment 821**

Defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(2), citing retroactive Amendment 821.  The PSR determined that defendant's criminal history score is zero (PSR, at ¶ 41).  Defendant moves for a reduction of sentence pursuant to Amendment 821, Part B, which reduces the offense level determined under Chapters Two and Three by 2 levels, provided defendant meets all the criteria listed in USSG §2B1.1, comment (n. 4(F)).  *See* Dkt. No. 169, at 2.

Defendant entered into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement wherein the parties stipulated that a sentence between 70 and 90-months custody based several non-Guideline-related factors was appropriate.  The parties agreed upon the sentence "regardless of any advisory Sentencing Guideline calculations."  *See* Dkt. No. 122 at 16-17.  The Court accepted the agreement, finding that the agreed upon sentencing range "is outside the applicable guideline range for justifiable reasons and those reasons are set forth with specificity."  *See* Statement of Reasons, at 4-5.  The Court finds that, based on the Defendant's history and characteristics, the agreed upon sentencing range and this Court's imposition of a sentence within that range is sufficient but not greater than necessary to meet the sentencing objectives set out in § 3553(a)(2).  If sentenced today

under like circumstances with a two-point Amendment 821 reduction to the sentencing range, this Court would impose the same sentence. Defendant's motion for a § 3582(c)(2) reduction of sentence pursuant to Amendment 821 is DENIED.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's second Emergency Motion for Reduction of Sentence filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. No. 166], is DENIED. Defendant's Motions to Take Judicial Notice [Dkt. Nos. 170, 173, 177], are GRANTED, as the Court has taken judicial notice.

Dated this 13th day of December 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE